# Harrier, Appellant, *v.* Dale.

*Negligence—Master and servant—Evidence of relation of master and servant—Case for jury.*

In an action by a boy to recover for personal injuries sustained while working at a corn husker owned by the defendant, the latter denied that he had employed the plaintiff, and testified that he had leased the corn husker to another person, and that such person had employed the plaintiff to work at the machine. Plaintiff's father testified that the defendant had employed his son, and it also appeared that the accident occurred in the defendant's barn, and when the plaintiff was husking defendant's corn, and that defendant had asked the boy to work the machine; and according to one of the witnesses had stated that he had so employed the boy. The evidence for the plaintiff tended to show that he had never previously worked at a corn husker, and that neither the defendant nor anyone else had given him any instructions how to work it. *Held,* that the case was for the jury.

Argued April 21, 1909. Appeal, No. 293, Jan. T., 1909, by plaintiffs, from judgment of C. P. Clearfield Co., Sept. T., 1907, No. 391, on verdict for defendant in case of Rex N. Harrier, by his next friend, James Harrier, and James Harrier v. David Dale. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before A. O. SMITH, P. J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant on the ground that the evidence showed that there was no relation of master and servant between defendant and plaintiff.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*S. V. Wilson* with him *Thomas H. Greevy*, for appellant.— When the facts on which the right to recover rest are controverted, it is the duty of the court to leave them to the jury: City of Harrisburg v. Saylor, 87 Pa. 216; Pender v. Raggs, 178 Pa. 339; Smith v. Harvey, 4 Pa. Superior Ct. 377; Central Coal & Iron Co. v. Grider, 65 L. R. A. 455; Nyback v. Lumber Co., 48 C. C. A. 632; Stork v. Philadelphia, 199 Pa. 462.

Plaintiff was entitled to proper instructions before being put to work at the machine: Noden v. Verlenden, 211 Pa. 135; Kehler v. Schwenk, 151 Pa. 505; Doyle v. Waste Co., 204 Pa. 618; Staddon v. Chapman Mineral Co., 33 Pa. Superior Ct. 475; Strawbridge v. Bradford, 128 Pa. 200; Brislin v. Coal Co., 20 Pa. Superior Ct. 234; Greenan v. Eggeling, 30 Pa. Superior Ct. 253; Welsh v. Butz, 202 Pa. 59; Lebbering v. Struthers, 157 Pa. 312; Gilbert v. Tanning Co., 221 Pa. 176; Wessel v. Steel Co., 28 Pa. Superior Ct. 332; Neilson v. Hillside Coal & Iron Co., 168 Pa. 256; Dougherty v. Dobson, 214 Pa. 252; Sheetram v. Trexler Stave, etc., Co., 13 Pa. Superior Ct. 219.

*Thomas H. Murray*, with him *J. P. O'Laughlin, Hazzard A. Murray* and *Oscar Mitchell*, for appellee.—The testimony both on part of the plaintiff and of the defendant shows that Rex N. Harrier was hired by Joseph A. Smeal and that he was his servant: Butler v. Townsend, 126 N. Y. 105 (26 N. E. Repr. 1017).

Joseph A. Smeal, by the uncontradicted evidence, having the control of the machine, and operating it under his lease, was an independent contractor, and the appellee was not liable for his negligence, if he was negligent: Smith v. Simmons, 103 Pa. 32; Harrison v. Collins, 86 Pa. 153; McCullough v. Shoneman, 105 Pa. 169.

The burden of proof is on appellant to show that he was employed by the appellee, but he has failed to do it: Hunt v. Penna. R. R. Co., 51 Pa. 475; Hyatt v. Johnston, 91 Pa. 196.

The law is settled that an employee, in accepting employment assumes all risks ordinarily incidental thereto, and all other risks, open and obvious, the dangerous character of which he has had an opportunity to observe: Bowen v. Penna. R. R. Co., 219 Pa. 405; Vant v. Roelofs, 217 Pa. 535; Burns v. Johnstown Pass. Ry. Co., 213 Pa. 143.

OPINION BY MR. JUSTICE MESTREZAT, May 17, 1909.

The questions in this case depend upon oral testimony and we think they were for the jury. The alleged lease or hiring by Smeal from Dale, the defendant, of the thresher and corn husker was not in writing. The authority of Smeal to operate and control both machines depends upon oral testimony, and the relation existing between Smeal and Dale was necessarily for the jury under the testimony in the case.

Did the relation of master and servant exist between the minor plaintiff and the defendant at the time the former was injured by the corn husker? The plaintiff alleges that it did and introduced testimony to sustain his contention. Smeal employed the boy through his father to measure grain as it came from the thresher. Smeal and his assistants including the boy spent about ten days in operating the threshing machine in the vicinity of their home in Clearfield county. They then returned and placed the thresher in the defendant's barn where was also the corn husker. Both machines, it is conceded, were owned by the defendant. Two or three days after the parties had returned from their threshing tour, the boy was put to work to feed the corn husker which was then being operated in the barn for the purpose of husking the defendant's corn. The boy testified that when he went to work on the morning of the day when the accident occurred the defendant asked him to feed the machine, and told him that Mr. Smeal would assist him. He further says that while at work there he boarded with the defendant; and that he saw

Smeal pay the money received for threshing to the defendant Dale.

Robert Harrier, the plaintiff's brother, testified that he was at the defendant's house on the evening of the accident. He went there to get his brother to accompany him to church. He asked Mr. Dale where he could find his brother, and Dale replied that he was hurt and had been taken to a doctor. Dale further said on this occasion, according to this witness, that, "Ferd Mains was to come and feed the machine, and as Ferd didn't come I had no other hand and I put your brother at it."

As tending to establish the relation of master and servant between Dale and the boy, the above testimony was corroborated by James Harrier, the father of the minor plaintiff. He admits that the boy was employed through him, and that Dale, the defendant, paid him for the boy's services, but says his son was employed to work about the steam thresher and not the corn husker. It further appears from the plaintiff's testimony that Smeal directed all threshing bills to be paid to Dale; that if Smeal received any part of the pay for the work he turned it over to the defendant; that the latter furnished the oil for the thresher, and paid for the repairs and for the coal when the machine left Dale's premises to be operated at some other point. Dale employed other help to assist in operating the machine and husking the corn on the day of the accident. He himself was in and about the barn at such times as he would return with a load of corn from the field to the barn.

If the evidence of the plaintiff is believed by the jury we are unable to see why it does not make out a case of employment of the boy by Dale. The machine at which the boy was put to work belonged to Dale and was on his premises. He was directed by Dale to feed the machine. It was Dale's corn that was being husked. Dale furnished coal and oil for the machine and paid for the repairs. He employed others to assist in operating the machine. Smeal retained no part of the money received for threshing, but directed it all to be paid to Dale. Smeal offered to pay the boy for assisting

him in threshing wheat by giving an order on Dale. This testimony, if believed, was sufficient to establish the relation of master and servant between Dale and the injured boy.

On the part of the defendant it is denied that he had anything whatever to do with employing the boy to work at either the threshing machine or the corn husker. He alleges that there was an oral agreement between him and Smeal by which Smeal hired or leased both machines from him for a consideration agreed upon between them, that the machines were operated and controlled by Smeal, that the boy was employed by Smeal to work at both machines and that at the time the boy was injured by the corn husker the machine was being operated and controlled by Smeal under the alleged hiring or lease. The defendant denies that he put the boy to work at the corn husker or had anything whatever to do with employing him for such service. He also denies that he ever admitted that he asked or directed the boy to work at the machine. In other words, the defendant's position is that he let both machines to Smeal who had absolute control over them and operated them entirely independently of the defendant. It is needless to say that if the testimony satisfied the jury of the correctness of the defendant's contention the plaintiff was not entitled to recovery. It is manifest, however, that the existence or nonexistence of the relation of master and servant between the defendant and the injured boy at the time of the accident was for the jury under the evidence submitted.

The negligence alleged in the statement on which the plaintiff seeks to recover is the failure of the defendant to instruct the boy as to the performance of his duties in feeding the corn husker. It is conceded that the defendant gave the boy no instructions. It is claimed, however, that Smeal gave him proper instructions. This is denied by the boy, who testifies that he received no instructions from Smeal or any other person other than to feed the machine. That instructions how to operate the corn husker were necessary and should have been given the boy we think is apparent without discussion. The machine was manifestly a dangerous one, and it is evident that the boy was not familiar with it. He had never worked

about such a machine, his previous employment having been ordinary farm work, and he knew nothing about feeding or operating a corn husker. It is not necessary that a machine should be in a manufactory to make it dangerous or that instructions need not be given to one unacquainted or not familiar with its operation because it is used elsewhere than in a manufactory. Whether the boy had sufficient knowledge to understand and avoid the danger incident to his employment at the machine was, under the testimony, for the jury. If he had such knowledge and did not use it and avoid the danger he was negligent. This was likewise a question for the jury. The simple fact that the rollers which caused the boy's hand to be crushed could be seen was not of itself sufficient to convict the boy of negligence. Such rollers we have reason to know from cases in this court are causing accidents almost daily to those whose youth or inexperience prevents them from protecting themselves while engaged in operating the machine. If it be conceded that the boy saw Smeal on one occasion clean the machine with his hands and relieve it from the corn which clogged the rollers, it does not follow that this was sufficient instruction to the boy to enable him to avoid the danger. In fact, it appears that the machine ought not to have been cleaned with the hands, but by something held in the hands suitable for the purpose.

The burden of proof was on the plaintiff, and it was incumbent upon him to establish the negligence alleged in the statement before he was entitled to recover. It was his duty to satisfy the jury that the defendant was responsible for negligence which resulted in his injury, and failing in this no responsibility rested on the defendant for the plaintiff's injuries. The evidence produced on the trial below, we think was sufficient to submit to the jury in support of the plaintiff's claim and, therefore, the learned judge was in error in withdrawing the case from the jury and directing a verdict for the defendant.

The first assignment of error is sustained, and the judgment is reversed with a new venire.